## No. 13,934.

## G. H. RUSSELL vs. ALLEN & CURREY.

### SYLLABUS.

1. In an action for damages the testimony shows that the moulding machine is not considered a dangerous machine.
2. While instructions should be given to all workmen in charge of machines, the extent of the instructions and the warning to be prudent, are to be gauged by the necessity because of danger.
3. The *onus* of proof is with the plaintiff. The foreman swore that he did not put plaintiff in charge of the machine.

4. The workman who had charge of the machine just previous to the accident, and who gave up his charge to the plaintiff, swore that before leaving this machine, he gave full instructions to the plaintiff.

5. All the witnesses, save plaintiff, testify that it was a matter of physical impossibility for the accident to have happened in the way alleged in plaintiff's petition and as he claims.

6. The witnesses swore that the wooden strip, while being worked through the moulder, will never jerk back into it and throw the hand in the interior of the moulder into the blades of the lower cylinder.

A PPEAL from the First Judicial District, Parish of Caddo.— *Land, J.*

*Alexander & Wilkinson,* for Plaintiff, Appellee.

*Thatcher & Welsh,* and *Wise & Herndon,* for Defendants, appellants.

The opinion of the court was delivered by

BREAUX, J. Plaintiff, in his own right and for his minor son, sues to recover the sum of seven thousand, six hundred and ten dollars for the loss of three fingers, while the latter, the son, was working for defendant at their planing mill in Shreveport.

Plaintiff avers that his son was employed as lumber carrier and stacker; that he was ordered by the foreman to assist another young man in operating a moulding machine which was dangerous; that its appliances were not properly protected to the end of preventing the happening of accidents; that skilled workmen only should be employed in such work; that his son knew nothing about moulding machines, and had always previously engaged in work not dangerous; that he was put to work without instructions regarding the dangerous work he was to perform.

Defendant answered the petition, and denied all of plaintiff's averments of negligence, and specially alleged that the injury complained of was caused by the gross carelessness of plaintiff's son.

Plaintiff's son, the injured party, was in his eighteenth year. He was inexperienced and had never worked at the moulding machine until a few minutes before the accident happened. He had, for about a month and a half, worked for the defendant. One of the employees of the defendant testifies that on the morning of the accident, and just prior to it, the foreman directed him to call on the son of the

plaintiff to assist him in carrying strips to the rip saw. After this work had been done and the strips prepared for the moulder, they were taken by him to that machine to be moulded into proper shape.

The moulder is a machine, operating mostly of itself. The workman at the moulder feeds or supplies the pieces of timber. This is done by pushing the small pieces or strips between the rollers. He, the workman, stands at the head of the machine and the feeding is done by pushing the strips between the rollers revolving toward the instrument referred to as knives, being blades attached to heads or cylinders. The blades near the front or head of the machine trims and smooths the top of the strip and gives it shape on one side and the other head or cylinder is near the end of the machine and planes the lower side of the strip, that is, cuts and makes smoothe the lower or bottom surface. We are informed that usually a moulding machine has four heads or cylinders, one in front and another at the tale end, as just mentioned, and one on each side. The functions of the side heads or cylinders is to trim the sides when such triming is deemed necessary.

The testimony shows that there were no blades on the side cylinders, and it follows that they were not in operation when the accident happened, only the front and rear blades were in operation.

From the time that the rollers clutch the slip with which they are supplied or fed by the workman in front of the machine, until it passes through the machine ordinarily, no necessity arises to touch the internal part of the machine. The moulder has a board which is known as the pressure board, that is set or fixed, stationary, immediately above the knives and extending beyond them.

The son of the plaintiff took the place of the man at this machine, and alone, without experience, undertook the work of operating it. The strips which were being run through the moulder were about fifteen feet in length. He testified that the one whose place he took, put one strip through the machine in his presence, and then said to him that in this work he had to run three or four strips through the machine and then to step to the back or rear of the machine and see if the strips were smoothe; that he complied with this instruction, and while in the rear or back of the machine, he took hold of the strip as it was being revolved out of the moulder and while he had his hand on the strip, the machine jerked the strip back, and also his hand, throwing it onto the blades by which his hand was severely cut; that is, he was holding the strip with his left hand, and the machine in some way

slipped back, and pulled his hand into the knives or blades before mentioned as being at the tail end of the machine.

With reference to the employment of the plaintiff's son at the moulder, and as to the instruction given to avoid the accident, the testimony is contradictory. No good reason suggests itself for us to conclude that he should not have undertaken the work at the moulder. A fellow workman turned the work over to him and went elsewhere to perform other work. This was done, plaintiff's son testifies, with the knowledge of the foreman. We have before stated that the testimony regarding the instruction was conflicting. Plaintiff is flatly contradicted by the young man who left him in charge of the machine as just stated. As this is an important point, we deem it proper to dwell at some length upon the facts, of which this is a summary:

Just before the accident, Harry Bryan, a fellow workman said to plaintiff that he must help in getting some strips ready for the moulder machine; that the foreman said that he, plaintiff, must help him, Bryan, the fellow workman.

Plaintiff says that, passing by the foreman, he inquired of him if he had given the order as stated by Bryan and that the foreman answered "Yes." Plaintiff swears that he and Bryan moved strips from the rip-saw station to the moulding machine; that they commenced to work at the machine and immediately after Bryan turned over the work to him of feeding the moulder machine; that Bryan directed him to run three or four of the strips through the machine, and then to leave the front and step to the back of the machine and see if the strips were of the required smoothness. It was in doing this that he was maimed as before stated.

Plaintiff testifies that he did not receive any special instructions. Bryan, on the other hand, testifies that he gave him complete instructions; that he specially pointed out every part of the machinery and warned him not to put his hands near the cylinder. This witness said, "I showed him how to start the moulder, and how to stop it, and how to feed it, and I said to him 'George, be sure to keep your fingers out of the feed rolls.' I showed him the rolls and the heads. I said to him, 'There is the head' " (or cylinder.) "After I had shown him all about it, he started to feed the moulder, and I watched him run two or three pieces through the machine, and I went to the shop to do other work."

Evidently, the jury did not believe this witness and did believe plaintiff. This is unusual.

We will state here, that all the witnesses agree that a skilled work-man is not required to operate this machine. It is not considered a dangerous machine, and no witness recalled that any accident of a serious nature had ever happened while operating it. An experienced mechanic testified, " I have taken them younger than that and put them to work on moulders, and they have made good feeders. None of them ever lost their fingers while working on moulders.

This brings us to the last point in the case. At several different times, while testifying, plaintiff stated that at the moment of the accident he was standing behind the machine; that he laid his hand upon the strip of wood that was being run through the machine to see if it was smooth enough. His hand was jerked back and thrown against the knives. All the other witnesses who testified upon the subject said that this was not possible, and gave their account of why it was not possible. As this, in our view, is the most important point in the case, we insert excerpts from their testimony.

L. C. Allen, one of the defendants, testified:

"I do not believe that his hand could get into the cylinder from the side and be cut in that manner."

W. S. Currry, the other defendant, said:

"It would be impossible for that piece of moulding to be jerked back into the machine. There is no force to drive it back against the self-feeding apparatus, and the hand could not slip into the space onto the knives."

The foreman testified that after an experience of some fifteen years in handling those machines, he never knew of any accident prior to this one happening to the feeder of the machine; and further, standing at the tail of the machine grabbing the strip with the left hand, it would be absolutely impossible for the strips, by being jerked back, to draw the hand into the knives.

Another foreman of the defendant, in answer to the question whether such an accident was possible, as stated by plaintiff, said:

"No, sir; that is impossible" and gave reasons about similar to those given by the other witnesses.

Not one of the witnesses testified that it was possible for the acci-dent to have happened in the way mentioned by plaintiff. There was no attempt made to rebut the testimony on this point.

From the verdict, we infer that the jury concluded that in any event the defendants were liable, and that this conclusion is based

upon the theory that plaintiff was not properly instructed; that it makes no difference, in view of that fact, whether plaintiff's account of the accident is or is not correct; that it was due to a want of instructions for which the defendants are liable. We find ourselves unable to agree with their conclusion. The fact that plaintiff is contradicted by defendants' foreman; that he is contradicted by his fellow workmen; that he is contradicted by the facts regarding the possibility of receiving a wound in the manner he states, renders it, we think, impossible to reconcile the testimony sufficiently to support a judgment.

A close attention to the issue and a careful review of contradicted statements at important points, results in forcing upon us the conclusion that plaintiff has not sustained his cause sufficiently to enable us to affirm the verdict.

For the reasons assigned, the verdict and judgment of the District Court are annulled, avoided and reversed at the cost of plaintiff in both courts.

Rehearing refused.